IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARTAYE ANDERSON,

    Petitioner,

    v.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:17-CV-102
JUDGE GEORGE C. SMITH
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ*, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> In the early morning hours of September 12, 2013, Columbus Police Detective, Eric Poliseno, interviewed a rape victim, K.W. K.W. told the detective that she had been at a friend's house and left with appellant to walk home. As they were walking, Donald Terry joined and walked with them. Terry grabbed her and initially attempted to drag her into an apartment, but after K.W. struggled, he dragged her into a dark, open garage across the alley. The garage did not have a garage door but did have a "door, like a normal-size door, like a house door, similar to that, in the back of the garage." (Tr. 115.) Terry pinned her against a parked car in the garage and held her hands behind her back while he vaginally and anally raped her. When he finished, Terry ran away.
>
> Appellant was present the entire time and K.W. could see him most of the time. Initially, appellant closed the door in the back of

the garage. Appellant walked in and out of the garage through the front doorway because the back door remained closed. K.W. stated, at one point, appellant was behind her and she could not see him.

Afterwards, appellant walked her home. K.W. repeatedly asked appellant if he had participated in the rape, because at one point, she felt a metal belt buckle on her backside and he was wearing a large belt buckle. After she was home, K.W.'s mother took her to the hospital where a nurse collected a rape kit and the police interviewed her. K.W. initially told Detective Poliseno that she was unsure whether appellant had participated in the rape, but she did not think he did so because she did not see him rape her. However, she stated that, at one point "it felt like he [Terry] had help, like, because it just felt like he had more hands than he was supposed to. * * * So it seemed like the other dude was helping." (Tr. 24–25.) This was the same time period that appellant was behind her and out of view. (Tr. 249.) K.W. testified that she felt as if appellant had participated in the incident because there were too many hands involved for one person, she felt a belt buckle and she knew appellant was wearing a belt buckle. When asked about whether she believed appellant participated in the rape, K.W. testified as follows:

There was a slight difference in the penis inside of me. There was a slight difference. And it felt like when one—or something came out, I felt, and it went back in, but it didn't feel the same.

There was a brief moment, like brief, where there was just nothing, like there was—and I couldn't see, but I could hear, like, but no one was talking, like exchanging the positions, not me, but people, them, the guys. But I don't know for sure. I'm just going off of what I can hear because I can't see because I'm head down.

(Tr. 132.)

When K.W. was asked about her statement regarding too many hands, she clarified her statement, as follows:

So at one point, it just felt like when somebody was raping me, I don't know who, but it seemed like another person had my hands, like, it just felt like a switch. That's all I can explain. It felt like a switch. It felt like there's too many hands.

\* \* \*

That's where the belt buckle comes in. When I say a switch, it felt like if Ray was raping me when he was, there was a stop for a brief moment. There was a stop, and I just felt like—well, so as far as a struggle, like, it got easier for whoever had my hands. It got easier to hold them, like they didn't have to struggle with me.

And then, like I said, there was a belt buckle. I don't know for sure whose belt buckle it was.

I didn't notice if Ray had a belt; I know Martaye had a belt. I felt a belt, and this is the first time I felt the belt. That's why I brought it up. The belt had, like, touched my butt, like somebody else was undoing something. That's all, like the belt.

\* \* \*

When I say it's a switch, I can't see, but based off what I felt, when initially someone had my hands, my hands were pinned the whole time. At first, I was able to—I could push back and then I could—it was more room for me to like—like it was less strength.

\* \* \*

Yeah, like less strength on my hands. So then if, like, it got tight[.]

\* \* \*

It got tighter, because he didn't have to focus on anything else, like me struggling. He didn't have to focus on two things at once. This is me describing it. So it got tighter. That's about it.

(Tr. 250–254.)

Detective Poliseno interviewed appellant on October 8, 2013. Appellant admitted he was present during the rape, but denied participating. Appellant stated that Terry had a gun. Detective Poliseno testified that the Bureau of Criminal Investigations ("BCI") found a mixture of DNA on the vaginal swabs of K.W. from her sexual assault exam and the standards belonged to both appellant and Terry. As a result, both appellant and Terry were arrested. When Detective Poliseno interviewed appellant a second time, appellant continued to deny participating in the rape and told the detective that he and K.W. had consensual sex the night before the incident. Detective Poliseno testified that he specifically asked K.W. if she had had consensual sex with appellant within 96 hours of the incident and she replied that she had never had consensual

sex with appellant. (Tr. 519–20.) During her testimony, K.W. denied having consensual sex with appellant. (Tr. 192.) She testified that she had a baby on August 7, 2013, approximately five weeks before the incident, and for medical reasons, she was advised not to have sex for six weeks. (Tr. 96; 128.)

The state presented two forensic scientists who work for BCI and testified regarding appellant's DNA. One of the forensic scientists testified she examined the vaginal swabs taken from K.W. and identified semen. The second forensic scientist analyzed the DNA results and determined that there was the presence of DNA from two individuals, consistent with Terry and appellant. (Tr. 304.) The DNA mixture was composed of a major profile, Terry, and a minor profile, appellant, which means the major profile was present at a much higher level than the minor profile. (Tr. 306.) Both scientists testified that there were several explanations for finding major and minor contributors, including that the minor contributor had consensual sex at an earlier time than the major contributor. (Tr. 314; 620.)

Appellant also presented an expert witness who testified that there were three possibilities as to why there were vastly different amounts of sperm from the major and minor contributors. The expert's opinion was that the DNA results in this case support several possibilities, including the possibility that appellant and K.W. had consensual sex within 96 hours of the assault. (Tr. 696.) However, on cross-examination, he stated that it was unlikely to have been within 24 hours of the assault. (Tr. 699.)

Appellant presented two witnesses who testified appellant was living with his aunt at the time. Both witnesses testified they had seen K.W. inside his aunt's house. Appellant's cousin testified that in August 2013, he saw appellant and K.W. in the basement and K.W. was pulling up her pants. Appellant's aunt testified that she saw appellant, Terry, and K.W. sitting at her kitchen table one evening during the summer of 2013.

On October 25, 2013, a Franklin County Grand Jury indicted both Terry and appellant on two counts of rape, a felony of the first degree, in violation of R.C. 2907.02. (Case No. 13CR–5679 .) On December 13, 2013, the grand jury indicted Terry and appellant on one count of kidnapping, a felony of the first degree, in violation of R.C. 2907.01, with a sexual motivation specification under R.C. 2941.147. (Case No. 13CR–6529.) All the charges arise out of the September 12, 2013 incident. The two defendants had separate trials.FN1 For trial purposes, the trial court consolidated

appellant's two cases (the two indictments). A jury found appellant not guilty of rape, but guilty of complicity to rape, a violation of R.C. 2907.02, and also guilty of kidnapping, a violation of R.C. 2905.01.

FN1: Terry was convicted of rape and kidnapping, and this court recently affirmed the judgments. *See State v. Terry*, 10th Dist. No. 15AP-176, 2015-Ohio-3847.

The trial court sentenced appellant on December 12, 2014. For purposes of sentencing, the trial court merged the complicity to rape and the kidnapping and imposed eight years as to the complicity to rape (Case No. 13CR–5679) at the Ohio Department of Rehabilitation and Corrections.

II. The Appeal

Appellant filed a timely notice of appeal and assigned the following error:

THE CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE OR MANIFEST WEIGHT OF THE EVIDENCE.

*State v. Anderson,* No. 14AP-1047, 2015 WL 6459757, at *1-3 (Ohio App. 10th Dist. Oct. 27, 2015). On October 27, 2015, the appellate court affirmed the judgment of the trial court. *Id.* On March 9, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Anderson*, 145 Ohio St.3d 1410 (2016).

On March 2, 2017, Petitioner filed the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied a fair trial due to "contradictory evidence" (claim one); and because he was handcuffed in front of the jury (claim two). It is the position of the Respondent that claim one is without merit and claim two is procedurally defaulted.

**Claim One**

In claim one, Petitioner asserts as follows: "Contradictory evidence." *Petition* (Doc. 3, PageID# 36.) Petitioner indicates that he raised the issue on direct appeal. (PageID# 37.) Petitioner has provided no indication regarding the constitutional nature of his claim or facts in

5

support.  Respondent presumes that Petitioner thereby is raising the same claim that he raised on direct appeal, i.e., a claim of insufficiency of the evidence and that his conviction on complicity to rape is against the manifest weight of the evidence.  However, Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the Petitioner must specify the nature of his grounds for relief and state the facts in support of each ground.  Dismissal under Habeas Rule 2(c) is appropriate in cases where it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication.  *See Rice v. Warden*, No. 1:14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (dismissal under Rule 2(c) appropriate where pleadings contain unintelligible and conclusory allegations and statements) (citations omitted); *Accord v. Warden, Lebanon Corr. Inst.*, No. 2:12-cv-355, 2013 WL 228027, at *3 (S.D. Ohio Jan. 22, 2013) (while the court liberally construes a *pro se* prisoner's pleadings, it is not required to "conjure allegations" on the petitioner's behalf) (citations omitted)).  Such are the circumstances here.  Thus, claim one is subject to dismissal on this basis alone.

Moreover, assuming that Petitioner intends to raise the same issue that he raised on direct appeal, this claim does not warrant relief.  Preliminarily, Petitioner's claim that his conviction on complicity to rape is against the manifest weight of the evidence constitutes an issue of state law that does not provide a basis for federal habeas corpus relief.   *See Norton v. Sloan*, No. 1:16-cv-854, 2017 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda*, No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio 2011), *aff'd*, 549 F. App'x 444 (6th Cir. 2013)) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law."); *Williams v. Jenkins,* No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765 n.4 (6th Cir. 2007)).

6

Under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Because a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Petitioner's claim of insufficiency of the evidence likewise fails.

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United State Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 16 (2013)(quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1)

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir.) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006), *cert. denied*, 551 U.S. 1134 (2007)), *cert. denied*, __ U.S. __, 134 S. Ct. 315 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the

8

> state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389.

*Id*. at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

The state appellate court rejected Petitioner's claim that the evidence was constitutionally insufficient to sustain his convictions as follows:

> [A]ppellant contends that the evidence is not sufficient to support his conviction for complicity to rape and it is against the manifest weight of the evidence.FN2 We disagree.
>
> FN2: Appellant only filed a notice of appeal in Case No. 13CR-5679, which is the complicity to rape conviction.
>
> Sufficiency of the evidence is the "legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), superseded by statute on other grounds. The question of whether the evidence is legally sufficient to support a verdict is a test of adequacy and a question of law. *Id*. " 'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009–Ohio–5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, superseded by statute on other grounds, following *Jackson v. Virginia*, 443 U.S. 307 (1979). An appellate court will not disturb a verdict unless, after viewing the evidence in a light most favorable to the prosecution, it is clear that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

During this inquiry, appellate courts do not engage in an evaluation of the witnesses' credibility but, rather, examine all the evidence admitted at trial to determine whether, if believed, that evidence supports the conviction. *State v. Taylor*, 10th Dist. No. 14AP–857, 2015–Ohio–3252, ¶ 9, citing *State v. Yarbourgh*, 95 Ohio St.3d 227, 2002–Ohio–2126, ¶ 79–80; *State v. Bankston*, 10th Dist. No. 08AP–668, 2009–Ohio–754, ¶ 4.

The test for determining whether a conviction is against the manifest weight of the evidence differs from the test as to whether there is sufficient evidence to support the conviction. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Thompkins* at 387, quoting Black's Law Dictionary 1594 (6th Ed.1990) (emphasis omitted). Even though an appellate court finds sufficient evidence to support a judgment, the court may conclude that a judgment is against the manifest weight of the evidence. *Taylor a*t ¶ 10, citing *Thompkins* at 387. An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

\* \* \*

Appellant was convicted of complicity to rape. Under the principle of complicity, an individual may be found guilty if he "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and * * * shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, syllabus. The intent necessary for a complicity conviction "may be inferred from the circumstances surrounding the crime." *Id*. Further, "[a] charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F). " 'Thus, a defendant charged with an offense may be convicted of that offense upon proof that he was complicit in its commission, even though the indictment is "stated * * * in terms of the principal offense" and does not mention complicity.' " *State v. Horton*, 10th Dist. No. 13AP–855, 2014–Ohio–2785, ¶ 8, quoting *State v. Herring*, 94 Ohio St.3d 246, 251 (2002).

In order to convict appellant of complicity to rape, the state was required to prove beyond a reasonable doubt that he was "acting with the kind of culpability required for the commission of an

> offense [rape], * * * [a]id [ed] or abet[ted] another [Terry] in committing the offense." R.C. 2923.03. The elements of rape require that the state prove under the facts of this case that appellant aided or abetted Terry while Terry "engage[d] in sexual conduct with another [K.W.] when the offender [Terry] purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2).
>
> Appellant does not contest that Terry raped K.W. and that appellant was present during the offense. However, he argues that the state failed to prove that he aided or abetted Terry in committing the rape because K.W.'s testimony regarding his involvement is not credible. However, as we previously stated, an appellate court cannot evaluate a witness's credibility on a review of the sufficiency of the evidence. Instead, we examine all the evidence admitted at trial to determine whether, if believed, that evidence supports the conviction. *Taylor; Yarbourgh*.
>
> Here, K.W.'s testimony, viewed in the state's favor, establishes the elements of a rape offense beyond a reasonable doubt. K.W. testified that Terry held her down and forced both vaginal and anal intercourse upon her. The evidence is also sufficient to support appellant's conviction for complicity to rape. K.W. testified that appellant closed the garage door after Terry dragged her into the garage and he was present during the rape. In recounting the events, she testified that at a point when she could not see appellant because he was behind her, she felt as if the men had switched positions. She felt as if there were too many hands involved to be only Terry because there was a tighter grip on her hands, she felt a belt buckle for the first time, and appellant was wearing a large belt buckle. After viewing this evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of complicity to rape proven beyond a reasonable doubt.

*State v. Anderson*, 2015 WL 6459757, at **3-5.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court

must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992)(citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume – even if it does not appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id*. (quoting *Jackson*, 443 U.S. at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), *cert. denied*, 558 U.S. 1114 (2010), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir.), *cert. denied*, 562 U.S. 868 (2010). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so.

For the reasons addressed by the state appellate court, this Court likewise concludes that, when viewing all of the evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's conviction on complicity to rape.

## Claim Two

## Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*)(citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas . . . ." *Coleman* v. *Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)), *cert. denied*, 544 U.S. 928 (2005). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal

law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to

14

comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Edwards*, 529 U.S. at 452 (quoting *Murray*, 477 U.S. at 479). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir.), *cert. denied*, 546 U.S. 1017 (2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (quoting id., at 853, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not,

15

> consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].'" *Id*., at 854, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L. Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96), *cert. denied*, _ U.S. _, 135 S. Ct. 1545 (2015).

Petitioner asserts that he was denied a fair trial because he was handcuffed in front of the jury. However, Petitioner failed to raise these same claims on direct appeal, where he was represented by new counsel. He may now no longer do so under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St. 3d 112, 114 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16, 18 (1981); *State v. Perry*, 10 Ohio St. 2d 175, 180 (1967). Additionally, the United States Court of Appeals for the Sixth Circuit has held that Ohio's doctrine of *res judicata* constitutes an adequate and independent state ground to preclude federal habeas corpus review. *See Williams v. Bagley*, 380 F.3d 932, 966-67 (6th Cir. 2004)(citing *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001), *cert. denied*, 535 U.S. 940 (2002); *Monzo v. Edwards*, 281 F.3d 568, 577 (6th Cir. 2002); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir.), *cert. denied*, 528 U.S. 946 (1999)), *cert. denied*, 544 U.S. 1003 (2005). This Court has consistently determined that Ohio's *res judicata* rules serve important state interests in the finality of criminal

convictions. *See, e.g. Davis v. Morgan*, No. 2:15-cv-00613, 2016 WL 6493420, at *11 (S.D. Ohio Nov. 2, 2016), *adopted and aff'd*, 2017 WL 56034 (S.D. Ohio Jan. 5, 2017). Petitioner has therefore procedurally defaulted the foregoing claim for relief.

He may still secure review of the merits of his claim if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001)(citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)(internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, and ignorance of procedural requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir.), *cert. denied*, 543 U.S. 989 (2004). Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007), *cert. denied sub nom., Hartman v. Bobby*, 554 U.S. 924 (2008). Petitioner has failed to establish cause for his procedural default.

### Actual Innocence

Petitioner may still secure review of this claim on the merits, if he establishes that it is "more likely than not" that new evidence, not previously presented, would allow no reasonable juror to find him guilty beyond a reasonable doubt. *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995).

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's]

> guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here. After an independent review of the record, the Court does not deem this to be so extraordinary a case as to relieve petitioner of his procedural default.

**Recommended Disposition**

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE